David Tom
1058 Herne Ave
Palm Bay, Florida 32907
Plaintiff
Pro Se

FILED
2019 AUG -2  PM 3: 44
US DISTRICT COURT
MIDDLE DISTRICT OF FL
ORLANDO FLORIDA

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

DAVID TOM,

    Plaintiff,

v.

CITY OF INDIAN HARBOUR BEACH,
A MUNICIPALITY WITHIN THE
STATE OF FLORIDA

AND

INDIAN HARBOUR BEACH VOLUNTEER
FIRE DEPARTMENT INC.

    Defendants.

Case No.: 6:19-cv-1432-orl-37DCI

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, DAVID TOM ("Tom"), files this complaint against Defendants, CITY OF INDIAN HARBOUR BEACH ("CITY") AND INDIAN HARBOUR BEACH VOLUNTEER FIRE DEPARTMENT, INC. ("IHBVFD") and alleges as follows:

### NATURE OF THE CLAIMS

1.    This is an action for damages, injunctive relief and declaratory relief against Defendants to address discrimination and the deprivation of rights secured by Title VII of the Civil Rights Act of 1964 42 U.S.C. §2000e, *et seq.* ("TITLE VII").

## JURISDICTION

2. Jurisdiction in this Court is proper as Tom is bringing this action pursuant to Title VII, thereby raising a federal question over which this Court possesses original jurisdiction.

## VENUE

3. Venue is proper in the U.S. District Court in the Middle District of Florida because all of the unlawful employment practices in dispute occurred in Brevard County, Florida, which is within the Middle District.

## THE PARTIES

4. At all times material hereto, Tom was a resident of the State of Florida, is and was a resident of Brevard County, Florida. Tom was a protected employee under Title VII.

5. Defendant CITY OF INDIAN HARBOUR BEACH is organized under the laws of the State of Florida and a recognized municipality within the State of Florida.

6. At all times material hereto Defendant INDIAN HARBOUR BEACH VOLUNTEER FIRE DEPARTMENT, INCORPORATED is registered / organized in the State of Florida and transacted business and performed services in this Judicial District.

## COMPLIANCE WITH PROCEDURAL REQUIREMENTS

7. Defendants were Tom's employer within the scope of Title VII.

8. Tom has exhausted all administrative remedies and satisfied all conditions precedent to filing this action. More than 180 days have passed without the FCHR issuing a determination on the charge to his FCRA claims. On May 8, 2019 the US Department of Justice issued a notice of right to sue on Tom's Title VII claims. Furthermore, less than

90 days has passed since the Department of Justice issued a right to sue letter on Title VII claims.

## STATEMENT OF FACTS

9. Tom was hired as a 29-year-old Asian male and, as such is in a protected class.

10. Tom worked for Defendants as a firefighter from approximately April of 2015 through June of 2016.

11. At the time of his hire, Tom was the only Asian firefighter on the entire roster at the City of Indian Harbour Beach Fire Department Station 56.

12. In fact, Tom was only one of three minorities at Station 56. During his employment with Defendants, Tom was subjected to illegal discrimination and harassment because of his race, and pervasive retaliation after he reported the issue to Defendants.

13. Tom was assigned a preceptor, Firefighter Todd Matarazzo who engaged in a pattern and practice of racial discrimination and retaliation with the hope that he would force Tom to quit or be terminated.

14. After Tom engaged in multiple instances of protected activity, CITY/IHBVFD overlooked pervasive retaliation and hostility after he complained about an incident on or about June 6 of 2015.

15. Tom was sleeping in Station 56 and was woken by the sounds of two heavily intoxicated individuals entering the fire station with a guest presumably using a bullhorn sometime after midnight. Tom believes that based on the context, volume and description of their ranting, they had just gotten into a bar fight in downtown Melbourne immediately

before arriving at Station 56. One raided the kitchen for food and one of them loudly called Tom "a fucking chink" and then proceeded to flip over Plaintiff's bed and stated "I got you good motherfucker" proudly to his colleagues.

16. Tom left the station immediately, went home and the following day noted the incident and decided the best course of action was a meeting in person with one of the officers. He asked then Captain (assistant chief as of July 2019) T. W. Knowlton about the culture of the department and expressed the inappropriate nature of the aforementioned conduct.

17. Tom expressed concern that there would be retaliation from those responsible and other members within the department due to the complaint to an officer, which was dismissed as unfounded. According to a public records request from CITY dated July 19, 2019 - CITY/IHBVFD failed to document this incident.

18. Tom researched the IHBVFD public page on Facebook and identified the two intoxicated individuals entering the station around the morning of June 6 of 2015 as Firefighters Michael Muldoon and Christopher McMillen.

19. Firefighter Matarazzo who was assigned as Plaintiff's "precept" was supposed to be Tom's mentor, engaged in the leadership of a cabal within both Defendant's operational structure along with Firefighters Michael Muldoon, Christopher McMillen, and Timothy Bowman, using the self-generated moniker "The A Team".

20. The tacit purpose of "The A Team" was to take over department training, social activities planned by IHBVFD and to dictate how IHBVFD was managed via the creation

- 4 -

of a supermajority of officers and directors in order for them to exert total control over expenditures, management, etc.

21. Parallel to their service to CITY and IHBVFD, members of "The A Team", Firefighers Matarazzo, McMillen, Bowman and Muldoon were all partners in a small business together, "BACKDRAFT VAPOR LLC", FL Division of Corporations Document #L15000179275, owing to their common interest in electronic cigarettes and vapor related periphery.

22. Despite leading training, no members of "The A Team" possessed any Instructor credentials by the Florida State Fire Marshal or had any formal instructional credentials outside of firefighting.

23. After taking over weekly training, instead of developing clear objectives for firefighting procedures, "The A Team" would with the tacit approval of the Fire Chief - demand all members of the department perform menial tasks such as chores around Station 56, including but not limited to housekeeping, washing dishes, cleaning the gym, and other non-skills related tasks deemed essential towards department operations in order to demonstrate their control over the members of the department and towards Tom.

24. "The A Team" created remedial training for probationary firefighters only. They did so without informing department officers such training existed with the goal of exercising control over probationary firefighters, warning them "They better show up if they expect to be voted in". Upon discovery of this unsanctioned training by one of the department officers, Tom was told by a frustrated officer that "They're just trying to bully whoever they can" and to dismiss their actions as nothing more than showboating.

25. CITY/IHBVFD operational policy states that firefighters without certifications by the Florida State Fire Marshal are issued and required to wear a blue helmet for identification that they are not certified yet.

26. Upon delivery of a Florida State Fire Marshal certification, a blue helmet is to be swapped out for a black helmet immediately - indicating that person is certified.

27. Firefighter Matarazzo was issued his black helmet on the honor system as he stated his certifications were en route once he completed wildland certification in Florida. Firefighters Brandon Rohmann, Brett Howard, Corey Swearingen, and Roman Restrepo were all issued black helmets immediately upon their delivery of valid certifications to the department.

28. Tom delivered his certifications via email to the Fire Chief and the Assistant Chief via email on Friday November 6 2015 and did not receive a black helmet until a few days before Thanksgiving 2015.

29. Firefighter Matarazzo also consistently gave Plaintiff unwarranted low evaluations to ensure he would not pass certain tests. Plaintiff reported Firefighter Matarazzo's discriminatory behavior and comments to Defendants, including to his Lieutenant, Anthony Coleman - who despite assigning Matarazzo as Plaintiff's mentor, was unaware of the omnipresent conflict with "The A Team".

30. Firefighter Matarazzo was previously employed as a Police Officer by the City of Melbourne in their Police Department (hereafter "MPD") in Melbourne, FL from September 4, 2007 to July 22, 2011.

31. During Matarazzo's tenure at MPD, he was the subject of frequent internal investigation and subsequent retraining, supervisory inquiries, occupational counseling, internal affairs investigation, and administrative discipline including but not limited to suspensions without pay due to a pattern of unprofessional behavior, misconduct and violation of department policies. Despite a documented behavioral and disciplinary history at MPD, Matarazzo was hired by CITY/IHBVFD.

32. After Tom reported the assault, hazing and racially offensive statements to which he was subjected, he noticed a change in behavior of the department members whenever he was at Station 56.

33. As a matter of fact, Tom was counseled by other firefighters and officers within the Defendant's organization to "stop complaining" and he should "keep his mouth shut if he wanted to be voted in" and that "The A Team" has a target on your back and they're not going to stop shooting until they get a hit.

34. Tom was informally told that "The A Team" is/was actively looking to find any reason to have him discharged or get him to quit, including giving him failing evaluations on certain activities they were responsible for teaching and then evaluating him on.

35. Firefighters Muldoon and McMillen were also partially responsible for assisting skill development of new hires (including Tom) prior to their completion of training certificated by the State of Florida Fire Marshal. According to a public records request from CITY dated July 19, 2019 - CITY/IHBVFD are unable to provide any documentation of training checklists for any personnel from May 2010 to July 2016.

36. Tom expressed concern about peer review and being voted in to numerous department officers, to which he was told "not to worry about it" because the department has in the past overlooked shortcomings of firefighters not meeting hourly/attendance requirements in lieu of the fact that the department does not have a large roster and is willing to accept anyone willing to help out. In fact, Tom was told on numerous occasions "there is a place for everyone in this station" implying that CITY/IHBVFD would find a use for anyone willing to further the goals of the organization.

37. CITY/IHBVFD organizational structure assigns each firefighter to an officer in charge of their skills development and advancement in the organization. Tom was not assigned an officer for several months after he was issued turnout gear in order to suppress complaints about retaliation.

38. CITY/IHBVFD operational policy dictates that all Firefighters that go on a call for service are required to have a minimum level of equipment; one of those items is a "Personnel Accountability Tag" or "PAR TAG" for short. The tag has the name of the firefighter and agency and is used by command staff to manage/track staffing on an incident.

39. Tom requested CITY/IHBVFD create and issue a tag and was instructed to check in with Firefighter Matthew Cooch because he was the only person in the organization able to process that request. From April of 2015 to October of 2015, Firefighter Cooch failed to respond to any emails, phone calls, or in person requests pertaining to a "PAR TAG" for Tom and never created or issued aforementioned equipment.

40. According to a public records request from CITY dated July 19, 2019, CITY is unable to produce any emailed requests for said equipment from Firefighter Matthew Cooch.

41. Neither Neither Lt. Zachary Anderson or Lt. Brent Thompson were responsive to this issue after sending them emails about the lack of equipment. Eventually, after approximately six months (October 2016) Lt. Anthony Coleman became frustrated at the lack of attention regarding the issue and made a tag for Tom to use by hand. Firefighter Matthew Cooch then considered the matter closed.

42. CITY/IHBVFD operational policy dictates that all Firefighters that go on a call for service are required to have a minimum level of equipment, one of those items is a face piece compatible with protective equipment or a "face mask" for short. Tom requested CITY/IHBVFD issue a mask, as was the practice with all other firefighters and was instructed to check in with Captain Henry Aprea because he was the only person in the organization able to process that request.

43. Tom's request was denied on the basis that Tom did not possess a State of Florida issued Volunteer Firefighter certification. This was in contrast to other individuals, such as Firefighters Todd Matarazzo, Ian Whalen, and Jocelyn Gonzalez - who were all issued facemasks before their certification was issued by the State Fire Marshal's office and presented to the department.

44. During IHBVFD's February 2015 monthly corporation meeting, Firefighter Matarazzo raised a number of pretextual objections regarding Tom's eligibility to be voted into the department. Some of Matarazzo's grievances encompassed Tom sleeping

in the station to comply with hourly commitments, despite the fact that sleeping overnight in the station is allowed by policy.

45. Tom has witnessed by Lt. Zachary Anderson, Firefighters Matthew Glidden, Michael Muldoon, Donna Gamble, Marcus Abraira and Ian Whalen all overnight at the station without any criticism from Matarazzo. Both CITY and IHBVFD were aware Tom was being subjected to a pretextual double standard as a result of Matarazzo's criticisms and the actions of "The A Team" and did nothing to stop their actions.

46. CITY/IHBVFD announced a promotional opportunity for anyone in the department - an outside instructor, James Bliss of JJMB PROFESSIONAL SERVICES, LLC would be contracted to teach Florida State Fire College sanctioned training regarding hydraulics, pump operations and apparatus operations and CITY would pay for all the training and the costs associated with the class and the subsequent Florida State Fire Marshal's Pump Operator Examination.

47. Tom inquired with Lt. Zachary Anderson regarding attending the additional training at which point he was denied entry. Lt. Anderson stated in a meeting with Captain Henry Aprea present, to Tom that the department could not in good conscience make someone with his skills eligible for promotion.

48. Approximately one week later, Lt. Anderson offered Tom the opportunity to take the class along with subsequent eligibility for promotion. When Tom asked what had changed, Lt. Anderson stated that the department did not have enough interested parties in the class and was now willing to promote due to lack of interest.

49. Lt. Anderson presented Tom with a contract, which stipulated that in exchange for CITY paying for all training and testing, recipients of the additional training would attend 100% of the scheduled training or make up any missing time with the instructor separately and they would be required to take and pass the State of Florida Pump Operator exam within a defined time span or reimburse the CITY/IHBVFD for their training expenses.

50. Tom immediately signed and returned to Lt. Anderson a completed contract. A public records request dated July 19, 2019 from CITY indicates that no such contract exists.

51. After Tom attended training and met the learning expectations and objectives to the satisfaction of the instructor and passed the state examination associated with promotion (as contractually stipulated by CITY), Tom presented the approved Pump Operator certification to the Fire Chief to be eligible for promotion, around 1800 hrs on June 16th. Several hours later after the June IHBVFD corporation meeting, Fire Chief J. Todd Scaldo terminated him with most of the department officers present.

52. Tom was injured in a training accident on April 28, 2016 with nearly all of the firefighters of the department present for weekly training as witnesses, including "The A Team" and he reported the injury via email to the officer assigned to him for that training exercise within 24 hours.

53. A few weeks after termination, Tom returned to Station 56 to talk to Fire Chief J. Todd Scaldo regarding the status of a few loose ends - and asked what CITY would be doing about the injury related to the training accident and the availability of medical

treatment. Tom's claims were immediately dismissed by the Fire Chief as non-compensable because they had not been reported.

54. Despite the timely reporting of Tom's injury via email, CITY denied/withheld rightful medical/workers compensation benefits related to Tom's injury in continuing retaliation. As a result of this impasse, Tom hired an attorney to represent him in making a worker's compensation claim against CITY.

55. The insurer for CITY, the Florida League of Cities/Florida Municipal Insurance Trust (hereafter "FLOC/FMIT") opened a claim for medical benefits in July of 2016.

56. Tom was directed to seek medical treatment on or around July 14, 2016 for injuries sustained during the course of employment with CITY with medical providers contracted with FLOC/FMIT.

57. Shortly after beginning medical treatment for injuries sustained on April 28, 2016; Tom received a telephone call on or about July 19, 2016 from Nancy Ross of R&R Adjusters Inc. (hereafter "Ross") acting as agents of FLOC/FMIT regarding the workers compensation claim.

58. Ross requested to meet with Tom to resolve some questions regarding circumstances/compensability of the claim as well as questions regarding the nature of the accident and for her to take a recorded statement for FLOC/FMIT to review.

59. Ross met with Tom later on or about the afternoon of July 19, 2016 and took a recorded statement regarding the accident as part of her duties as requested by FLOC/FMIT.

60. Tom was led to believe that the purpose of her visit was to determine whether or not he was filing a false/fraudulent workers compensation claim against CITY in retaliation for being terminated/not voted in to IHBVFD.

61. Tom reaffirmed that the injury was reported in a timely fashion via email and that a personality conflict with "The A Team" had nothing to do with the accident, the injury and subsequent workers compensation claim and requests for medical treatment.

62. Ross then went on to indicate that false workers compensation claims/workers compensation fraud are of great concern to FLOC/FMIT and that they have taken a special interest in his claim specifically because CITY reported his claim as fraudulent and retaliatory owing to the circumstances of separation with CITY/IHBVFD.

63. Ross suggested to Tom that it would benefit him to attend 100% of all mandated doctor visits and physical therapy because he was being investigated for filing a false worker's compensation claim/workers compensation fraud and not attending medical care as ordered by physicians would give credibility to accusations of workers compensation fraud and related fraudulent activity.

64. In addition to CITY knowingly withholding/denying medical benefits via workers compensation to Tom, CITY continued retaliation after termination by taking a timely reported and compensable injury and reporting it to FLOC/FMIT as fraudulent and retaliatory.

65. CITY/IHBVFD maintain no policy defining minimum requirements for firefighting skills, demonstration of abilities, physical performance, prerequisites, disqualifying factors, et seq. to be affiliated as a firefighter for CITY/IHBVFD other than

meeting monthly hourly minimums and attending regularly scheduled training, corporation, and special events.

66. CITY/IHBVFD maintain no policy defining minimum requirements for acceptance, only favorable peer review.

67. Firefighter Todd Matarazzo led "The A Team" by using his titular power to violate Title VII by engaging in systemic and pervasive harassment in order to get Tom to quit while simultaneously creating an environment where it was impossible for Tom to obtain favorable peer review.

68. Eventually on or about June 16, 2016 CITY/IHBVFD terminated Tom because of his race, because he engaged in a protected activity and complained about retaliation.

69. CITY/IHBVFD reasons for Tom's termination are pretextual.

## COUNT I - TITLE VII VIOLATION
## (RACIAL DISCRIMINATION)

70. Plaintiff re-alleges and re-adopts paragraphs 1 through 69 of this Complaint as if fully set forth herein.

71. The foregoing actions of CITY/IHBVFD constitute racial discrimination against Plaintiff in violation of Title VII. Tom engaged in protected activity when he objected to the unlawful assault and racial discrimination to which he was being subjected.

72. As a minority, Plaintiff is a member of a protected class.

73. Plaintiff was qualified for his position.

74. Plaintiff was injured due to CITY/IHBVFD violations of Title VII, including but not limited to his termination, being subjected to hostile work environment, and less

favorable job assignments and working conditions in comparison to similarly situated non-minority peers.

75. Plaintiff is entitled to legal and injunctive relief as a result of CITY/IHBVFD actions.

**WHEREFORE,** Plaintiff demands:

(A) An injunction restraining continued violation of Title VII;

(B) Compensation for lost benefits, and other remuneration;

(C) Compensatory damages, including emotional distress, allowable at law;

(D) Punitive damages; from Defendant IHBVFD only

(E) Prejudgment interest on all monetary recovery obtained;

(F) All costs and attorney fees incurred in prosecuting these claims; and

(G) For such further relief as the Court deems just and equitable

## COUNT II - TITLE VII VIOLATION

### (RETALIATION - DENIAL OF WORKERS COMPENSATION)

76. Plaintiff re-alleges and re-adopts paragraphs 1 through 69 of this Complaint as if fully set forth herein.

77. Plaintiff belongs to a protected group.

78. Plaintiff was subjected to disparate treatment based on his race.

79. Actions of CITY/IHBVFD were willful and done with malice.

80. Plaintiff was injured in a training accident and was further injured due to Defendant's violations of Title VII and subsequent denial/withholding of medical treatment, actions for which Plaintiff is entitled to legal and injunctive relief.

**WHEREFORE,** Plaintiff demands:

(A) An injunction restraining continued violation of Title VII;

(B) Compensation for lost benefits, and other remuneration;

(C) Compensatory damages, including emotional distress, allowable at law;

(D) Punitive damages; from IHBVFD only

(E) Prejudgment interest on all monetary recovery obtained;

(F) All costs and attorney fees incurred in prosecuting these claims; and

(G) For such further relief as the Court deems just and equitable

## COUNT III - TITLE VII VIOLATION

### (FAILURE TO PROMOTE)

81. Plaintiff re-alleges and re-adopts paragraphs 1 through 69 of this Complaint as though fully set forth herein.

82. Plaintiff belongs to a protected group.

83. Plaintiff was subjected to disparate treatment based on his race.

84. CITY/IHBVFD actions were willful and done with malice.

85. Plaintiff was injured due to CITY/IHBVFD violations of Title VII and failure to promote, actions for which Plaintiff is entitled to legal and injunctive relief.

**WHEREFORE,** Plaintiff demands:

(A) An injunction restraining continued violation of Title VII;

(B) Compensation for lost benefits, and other remuneration;

(C) Compensatory damages, including emotional distress, allowable at law;

(D) Punitive damages; from Defendant IHBVFD only

(E) Prejudgment interest on all monetary recovery obtained;

(F) All costs and attorney fees incurred in prosecuting these claims; and

(G) For such further relief as the Court deems just and equitable

## COUNT IV - TITLE VII VIOLATION

## (RETALIATION)

86. Plaintiff re-alleges and re-adopts paragraphs 1 through 69 of this Complaint as though fully set forth herein.

87. The foregoing actions of CITY/IHBVFD constitute retaliation against Plaintiff based upon engaging in protected activities in violation of Title VII.

88. CITY/IHBVFD actions were willful and done with malice.

89. The retaliation described herein occurred as a result of Tom's attempts to exercise his rights protected by law to resist and oppose unlawful discrimination.

90. Plaintiff was injured due to CITY/IHBVFD violations of Title VII, including but not limited to his termination, actions for which Plaintiff is entitled to legal and injunctive relief.

**WHEREFORE,** Plaintiff demands:

(A) An injunction restraining continued violation of Title VII;

(B) Compensation for lost benefits, and other remuneration;

(C) Compensatory damages, including emotional distress, allowable at law;

(D) Punitive damages; from Defendant IHBVFD only

1  (E) Prejudgment interest on all monetary recovery obtained;

2  (F) All costs and attorney fees incurred in prosecuting these claims; and

3  (G) For such further relief as the Court deems just and equitable

## DEMAND FOR A JURY TRIAL

Tom hereby requests a trial by jury on all issues so triable.

Dated: August 2, 2019            Respectfully Submitted,


_____
David Tom
1058 Herne Ave
Palm Bay, FL 32907
321-725-9212
Pro Se