UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

DAVID TOM,

      Plaintiff,

v.                                                             Case No. 6:19-cv-1432-Orl-37DCI

CITY OF INDIAN HARBOUR BEACH;
and INDIAN HARBOUR BEACH
VOLUNTEER FIRE DEPARTMENT,
INC.,

      Defendants.

---

## ORDER

Defendant City of Indian Harbour Beach ("**City**") and Defendant Indian Harbour Beach Volunteer Fire Department, Inc. ("**Fire Department**") each move to dismiss Plaintiff David Tom's ("**Tom**") Complaint (Doc. 1) for failure to state a claim. (Docs. 17, 18.) The Fire Department also moves for a more definite statement. (Doc. 18.) Tom, *pro se*, opposes both motions. (Doc. 22.) The Court grants the motions in part and denies them in part, and grants Tom leave to file an amended complaint.

### I.      BACKGROUND[1]

Tom is an Asian male who worked for the Defendants as a firefighter in the Indian Harbour Beach Volunteer Fire Department from about April 2015 until June 2016. (Doc.

---

[1] At this stage in the proceedings, the Court takes the Complaint's well-plead factual allegations as true in its description of events. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

1, ¶¶ 9–11.) When hired, he was the only Asian firefighter at his fire station ("**Station**"). (*Id.* ¶ 11.) About two months after he started, he was sleeping in the Station when the sounds of "two heavily intoxicated individuals entering the fire station with a guest" woke him. (*Id.* ¶¶ 14–15.) These individuals were firefighters Michael Muldoon ("**Muldoon**") and Christopher McMillen ("**McMillen**"). (*Id.* ¶ 18.) One of them went to Tom, called him a "fucking chink," flipped over his bed, and stated "I got you good." (*Id.* ¶ 15.) Tom left the station and went home. (*Id.* ¶ 16.) The next day, he met with Captain T.W. Knowlton about this incident; later he reported this incident, and others, to Lieutenant Anthony Coleman. (*Id.* ¶¶ 16, 29.) Nothing improved.

Turns out, Tom's assigned precept, firefighter Todd Matarazzo ("**Matarazzo**") was close with Muldoon, McMillen, and a third firefighter, Timothy Bowen—they were business partners and called themselves the "A Team." (*Id.* ¶¶ 19, 21.) After reporting, Tom noticed a change in behavior of the department members at the Station. (*Id.* ¶ 32.) Other firefighters and officers warned him to "stop complaining" and to "keep his mouth shut" and that the A Team had a target on his back and was actively looking for any reason to have Tom discharged or get him to quit. (*Id.* ¶¶ 33–34.)

More incidents followed. Contrary to department policy, he was not assigned an officer to oversee his skills development and organization advancement for several months. (*Id.* ¶ 37.) He had multiple issues getting the correct equipment. (*Id.* ¶¶ 39, 41.) A Personal Accountability Tag was not issued for almost six months. (*Id.*) The firefighter responsible for issuing the tag refused to respond to any emails, phone calls, or in-person

requests for the tag until Tom's Lieutenant became so frustrated with the delay he made Tom a tag himself, by hand. (*Id*.) Tom's request for a face mask was denied, ostensibly because he lacked certification from the Florida State Fire Marshal, but other firefighters received facemasks before their certifications were issued. (*Id*. ¶ 42, 43.) After he was certified, Tom's blue helmet was not immediately replaced with a black helmet—like other new firefighters. (*Id*. ¶¶ 27–28.)

His precept, Matarazzo, consistently gave Tom unwarranted low evaluations to ensure he would not pass certain tests. (*Id*. ¶ 29.) Matarazzo objected to Tom's eligibility to join the department, saying Tom was sleeping in the Station to comply with hourly commitments, despite this being allowed by policy and a common and uncriticized occurrence with other firefighters. (*Id*. ¶¶ 44, 45.) When a promotional chance to participate in additional training arose, Lieutenant Anderson told Tom the department could not make someone with his skills eligible for promotion. (*Id*. ¶¶ 46–47.) Later, because of lack of interest from others, Tom participated in the class and gained eligibility for promotion. (*Id*. ¶ 48.) Alas, no promotion was forthcoming. Hours after presenting the Defendants with his new certification and eligibility for promotion, Tom was terminated. (*Id*. ¶ 51.)

That's not all. Before termination, in April 2016, Tom was injured in a training accident with nearly all the firefighters present. (*Id*. ¶ 52.) Tom promptly notified the officer assigned to him for that training exercise, by email, of his injury. (*Id*.) After his termination, Tom returned to the Station to resolve outstanding issues and asked about

his injury and the availability of medical treatment. (*Id.* ¶ 53.) The Fire Chief dismissed the claim as non-reported and thus non-compensable, despite Tom's email to his assigned officer within 24 hours of the injury. (*Id.* ¶¶ 52, 54.) Tom protested, ultimately hiring a lawyer, at which point a medical benefits claim was opened for him by the City's insurer. (*Id.* ¶ 54, 55.) An investigation was started against Tom for filing a fraudulent workers compensation claim against the City by the insurance company. (*Id.* ¶¶ 57–60.) He believes this investigation was retaliatory. (*Id.* ¶ 64.)

Tom claims he exhausted all administrative remedies, receiving a right to sue letter on his Title VII claims on May 8, 2019. (*Id.* ¶ 8.) He now sues both the City and the Fire Department alleging violations of Title VII. (Doc. 1 ("**Complaint**").) Count I claims racial discrimination, Count II is titled Retaliation—Denial of Workers Compensation, Count III is for failure to promote, and Count IV is for retaliation, all in violation of Title VII. (*Id.*) Defendants each move to dismiss the Complaint. (Docs. 17, 18.) With Tom's response (Doc. 22), the matter is ripe.

## II.  LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." A complaint "that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of

action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alterations and internal quotation marks omitted). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Such a determination is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Id.*

### III.   ANALYSIS

The Court first addresses three of Defendants' general arguments about the Complaint: whether Tom sufficiently alleged the Fire Department meets the employee-numerosity requirement of Title VII; lumping of Defendants together; and failure to exhaust his administrative remedies. Then we'll see whether each individual count is properly plead.

### A.   Number of Employees

Title VII has an "employee-numerosity requirement" to "spare very small businesses from Title VII liability." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 504–05 (2006). Only organizations with fifteen or more employees for each working day in each of twenty or more calendar weeks are subject to Title VII. 42 U.S.C. § 2000e(2)(B); *see also Arbaugh*, 546 U.S. at 504–05. The Fire Department argues Tom failed to allege it meets this requirement. (Doc. 18, pp. 6–7.) The Fire Department is correct. The Complaint lacks any allegations of the size of the Fire Department or whether the volunteer organization employs enough people to subject it to Title VII. (*See* Doc. 1.) Tom alleges, "Defendants

were Tom's employer within the scope of Title VII," but given the volunteer nature of the Fire Department, this conclusory legal allegation is insufficient. *See Iqbal*, 556 U.S. at 681. Since "the threshold number of employees for application of Title VII is an element of a plaintiff's claim for relief," Tom fails to state a Title VII claim against the Fire Department and it must be dismissed. *See Arbaugh*, 546 U.S. at 516; *see also Hughley v. Upson Cty. Bd. of Comm'rs*, 696 F. App'x 932, 935 (11th Cir. 2017) (affirming dismissal when the plaintiff "failed to allege facts establishing [the defendants] qualified as an employer, as required to state a claim under Title VII"). Since Tom may allege facts establishing the Fire Department is subject to Title VII, the Fire Department will be dismissed without prejudice.

### B. Lumping Defendants

The City claims Tom failed to identify which counts are against which Defendants, lumping them together and depriving them of adequate notice of his claims in violation of Federal Rule of Civil Procedure 8. (Doc. 17, p. 4.) There are only two defendants, Tom claims both were his employer during the events alleged. (Doc. 1, ¶ 7.) "The fact that defendants are accused collectively does not render the complaint deficient." *Kyle K. v. Chapman*, 208 F.3d 940, 944 (11th Cir. 2000). The Complaint can be "fairly read to aver that all [D]efendants are responsible for the alleged conduct." *See id.* Tom did not violate Rule 8 when he collectively charged both the City and the Fire Department with the same Title VII violations arising out of his employment.

### C. Exhaust Administrative Remedies

Defendants argue the Complaint should be dismissed for failure to exhaust

administrative remedies. (*See* Doc. 17, pp. 5–6; Doc. 18, pp. 10–12.) In the Complaint, Tom alleges he "has exhausted all administrative remedies and satisfied all conditions precedent to filing this action." (Doc. 1, ¶ 8.) He also claims he received a right to sue letter, although he does not attach the letter and both Defendants claim they were never notified of any charges filed with the Equal Employment Opportunity Commission ("**EEOC**") or the Florida Commission on Human Relations. (Doc. 1, ¶ 8; Doc. 17, pp. 5–6; Doc. 18, pp. 3–4.)

At this stage in the proceedings, the allegations are sufficient. "[T]he filing of a charge of discrimination with the EEOC is a condition precedent to the bringing of a civil action under Title VII." *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 460 (5th Cir. 1970) (citations omitted).[2] It is not a jurisdictional prerequisite. *Jackson v. Seaboard Coast Line R. Co.*, 678 F.2d 992, 1001 (11th Cir. 1982). Under Federal Rule of Civil Procedure 9(c), a general allegation of satisfaction of a condition precedent is all that is necessary. Here, the allegations—Tom exhausted his administrative remedies and received a right to sue letter—will meet this standard. *See O'Toole v. Ford Motor Co.*, No. 6:13-cv-849-ORL-36-CEH-GJK, 2014 WL 2532451 (M.D. Fla. Mar. 6, 2014) (denying a motion to dismiss when the plaintiff had alleged he exhausted his administrative remedies); *cf. Burnett v. City of Jacksonville*, 376 F. App'x 905, 907 (11th Cir. 2010) (affirming dismissal where plaintiff "did not generally allege that she exhausted her administrative remedies").

---

[2] The decisions of the former Fifth Circuit rendered before October 1, 1981 are binding on this circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

### D.    Count I

"The allegations of the complaint, especially a pro se complaint, must be read in a liberal fashion." *Richardson v. Fleming*, 651 F.2d 366, 368 (5th Cir. 1981) (citations omitted). "Although we give liberal construction to the pleadings of *pro se* litigants, 'we nevertheless have required them to conform to procedural rules.'" *Muhammad v. Muhammad*, 654 F. App'x 455, 456 (11th Cir. 2016) (quoting *Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007)). "The statement must 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Count I fails not because Tom didn't allege enough facts but because he alleged so many his pleading does not give the Defendants fair notice of the theory of his claim.

Count I is simply titled "Discrimination." (Doc. 1, ¶¶ 70–75.) Tom does not explain what facts led him to this claim, simply re-alleging all previous factual allegations without elaboration and then claiming "the foregoing actions" of the Defendants "constitute racial discrimination." (Doc. 1, ¶¶ 70–75.) He concludes Count I by alleging he was injured by "his termination, being subjected to hostile work environment, and less favorable job assignments and working conditions in comparison to similarly situated non-minority peers." (*Id.* ¶ 74.) These allegations likely make out a claim for a hostile work environment.[3] But they also make out a claim for retaliation because of his

---

[3] To state a claim for a hostile work environment, a plaintiff must show: (1) "he belongs to a protected group"; (2) "he has been subject to unwelcome harassment"; (3) "the harassment must have been based on a protected characteristic of the employee, such as national origin"; (4) "the harassment was sufficiently severe or pervasive to alter

termination, and a claim for adverse employment actions. So Count I fails to give Defendants fair notice of Tom's claim and the grounds on which it rests, comingling different allegations. *See Twombly*, 550 U.S. at 555. Tom must re-allege Count I, explaining which facts support his claim with some specificity, and show his theory.

### E. Counts II and IV

Both Counts II and IV allege retaliation. To state a claim for retaliation, Tom must allege: "(1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) there is some causal relation between the two events." *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001) (citations omitted). Neither Count II or IV, both titled "Retaliation," alleges these elements, so these counts fail.

In Count II, Tom alleges he belongs to a protected group, he was subject to disparate treatment, Defendants' actions were willful and malicious, and he was "injured in a training accident and was also injured due to Defendant's violations of Title VII and later denial/withholding of medical treatment." (Doc. 1, ¶¶ 77–80.) Tom realleges the factual allegations without explaining which relate to this count. (*See id*. ¶ 76.) Given the liberal pleading standard for *pro se* litigants, Tom has met the first element—he alleges complaining to two supervisors about his discriminatory treatment at the Station. (Doc.

---

the terms and conditions of employment and create a discriminatorily abusive working environment"; and (5) "the employer is responsible for such environment under either a theory of vicarious or of direct liability." *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002).

1, ¶¶ 16, 29); *Shannon v. Bellsouth Telecomm., Inc.*, 292 F.3d 712, 716 n. 2 (11th Cir. 2002) ("Title VII protects not just individuals who have filed formal complaints but also those who informally voice complaints to their superiors . . . ." (internal quotations and citations omitted)). But the second two elements are missing. It is unclear what "adverse employment action" Tom suffered. Count II is titled "Retaliation—Denial of Workers Compensation" but he doesn't allege or refer to denial of workers compensation in these paragraphs. (*See* Doc. 1, ¶¶ 76–80.) He claims in Count II Defendants denied or withheld "medical *treatment*," (*id.* ¶ 80 (emphasis added)), but nowhere does Tom allege any facts establishing this. Tom also fails to allege a causal connection between the first and second elements. (*See id.* ¶¶ 76–80.) Count II is dismissed for failure to state a claim.

Count IV is even more factually deficient. It is titled "Retaliation," but doesn't explain how this differs from Count II. (*See* Doc. 1, ¶¶ 86–90.) This count either duplicates Count II or it fails to give notice to Defendants of the claim. Other than re-alleging all factual allegations, the count is silent on how the facts establish the elements of retaliation. (*See id.*) Count IV is dismissed.

### F.      Count III

Count III is titled "Failure to Promote." (Doc. 1, ¶¶ 81–85.) To succeed on a failure to promote claim, Tom needs to establish: (1) he belongs to a protected class; (2) he applied for and was qualified for a promotion; (3) he was rejected despite his qualifications; and (4) other equally or less-qualified employees outside his class were promoted. *Brown v. Alabama Dep't of Transp.*, 597 F.3d 1160, 1174 (11th Cir. 2010). While

Tom alleges the first element, he never alleges he applied for a promotion, much less being denied one. He alleges he applied to participate in a training, which he could ultimately do, and submitted paperwork showing his eligibility for promotion, but not that he applied. (*See* Doc. 1.) He also fails to allege a comparator. Count III fails to state a claim and must be dismissed under Federal Rule of Civil Procedure 12(b)(6).

## IV.  CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED**:

1.  Defendant City of Indian Harbor Beach's Motion to Dismiss Plaintiff's Complaint (Doc. 17) is **GRANTED IN PART AND DENIED IN PART:**

    a.  The Motion is **GRANTED** to the extent that each count fails to plead sufficient factual allegations to state a claim.

    b.  In all other respects, the Motion is **DENIED.**

2.  Defendant Indian Harbour Beach Volunteer Fire Department, Inc.'s Motion to Dismiss, or in the Alternative, for a More Definite State (Doc. 18) is **GRANTED IN PART AND DENIED IN PART:**

    a.  The Motion is **GRANTED** to the extent that each count fails to plead sufficient factual allegations to state a claim and the Complaint fails to allege the Indian Harbour Beach Volunteer Fire Department, Inc. meets the employee-numerosity requirement of Title VII.

    b.  In all other respects, the Motion is **DENIED.**

3.  Plaintiff David Tom's Complaint (Doc. 1) is **DISMISSED WITHOUT**

**PREJUDICE.**

4.      By Monday, **January 27, 2020**, Plaintiff may file an amended complaint

consistent with the directives of this Order. Failure to timely file may result

in closure of this action without further notice.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on January 13, 2020.



ROY B. DALTON JR.
United States District Judge

Copies to:
Counsel of Record
*Pro Se* Party